BAKER, Ex parte. See Case No. 8,558.

## Case No. 762.

### In re BAKER.

### [1 Hask. 593.] [1]

### District Court, D. Maine. Dec., 1875.

BANKRUPTCY ACT OF 1841 — ENDORSEMENT ON MORTGAGE IN FRAUD OF THE ACT — ATTACHING CREDITOR—LIEN.

1. An endorsement by the mortgagor upon a chattel mortgage, subjecting chattels acquired after the date of the mortgage to its operation, made in fraud of the bankrupt act, does not invalidate the mortgage otherwise valid, but simply fails of its purpose.

2. A creditor having attached the chattels of his debtor within four months of his bankruptcy, and meantime having paid the debt and assumed liabilities secured by an existing mortgage thereon to save the attachment, thereby acquires a valid lien upon the chattels attached, although the attachment becomes void upon the debtor's bankruptcy, and should be repaid the same by the assignee upon the sale of the chattels to which the lien attached.

3. An attachment by a creditor of the property of his insolvent debtor is not a fraud upon the bankrupt act.

In bankruptcy. Petition by attaching creditors to be reimbursed, from the proceeds of the sale of certain chattels of the bankrupt [Harrison Baker] by the assignee, for sums paid and liabilities incurred in raising a mortgage from the same, to preserve their attachment thereof that was dissolved by the debtor's bankruptcy. [Decree for petitioners.]

William P. Whitehouse, for petitioners.

Eben F. Pillsbury and Samuel Titcomb, for assignees.

FOX, District Judge. Baker was adjudged bankrupt in this court, upon his petition filed Sept. 20, 1875, and the respondents were duly appointed his assignees. The bankrupt was the keeper of the Augusta House, under a lease to him from Cushman & als., for three years from October 15, 1874, at a rent

[1] [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]

2 FED.CAS.—28

of $3,200 per year, payable in monthly installments, together with the taxes and insurance. The performance of the covenants of this lease were secured by a chattel mortgage to the lessors from Baker, of all the household furniture in the house, "together with all property of a similar description which he may hereafter add thereto, so that the said property should at all times be suitable and proper for carrying on said Augusta House;" the mortgage also provided "that said Baker should indemnify and save harmless the lessors from all liabilities they had already or may hereafter incur, by reason of advances made by them, or as signers or endorsers of any notes which they should make or endorse for the accommodation of said Baker." This lease and mortgage were duly recorded, and the bankrupt went into possession of the house and remained there until the filing of his petition in bankruptcy. He added to the furniture his purchases amounting to about $4,000, a portion of which was attached on a writ in favor of the Gas Company, July 31, 1875. This attachment was discharged, and on August 5th Baker executed on the back of the original mortgage an agreement reciting "that in consideration of the depreciation in value, by use past and future, of the property within described, I hereby agree that the within mortgage with this endorsement thereon shall hold and cover any and all additions that have been or may be made to the same; also including two billiard and one pool table put into the Augusta House by me together with all the fixtures thereto belonging."

This instrument was recorded in the city records on the same day.

Under the laws of this state, an attachment of chattels subject to a mortgage may be made on mesne process. Rev. St. [Me.] c. 81, §§ 41–44, provide that such mortgaged property may be attached, held and sold, as if it was unincumbered, if the attaching creditor first tenders or pays the full amount unpaid on the demand so secured. The mortgagee shall not bring his action against the attaching officer until he has given him forty-eight hours' written notice of his claim and the true amount thereof; and the officer or creditor may, within that time, discharge the claim by paying or tendering the amount due thereon, or restore the property. "If the creditor redeems such property and it is subsequently sold by the officer, he shall from the proceeds first pay to the creditor the amount, with interest, paid by him to redeem, and apply the balance to the debt on which it was attached."

The petitioners being creditors of the bankrupt, on the 18th of August sued out their writs against him, and caused the mortgaged furniture to be attached thereon by the sheriff of Kennebec county, and on the same day due notice of the attachment was given by the officer to the mortgagees, to which, on the 27th of the same month, they made

written reply, setting forth in detail the several sums claimed by them to be secured by said mortgage, amounting in the aggregate to $5,903.72 on that day; and they further claimed to hold the same as security for the accruing rent during the continuance of the lease.

On the 27th of August, the mortgagees served upon Baker a notice of foreclosure, under the statute, for breach of condition of the mortgage, and on the 28th the attaching creditors paid to the mortgagees the amount claimed by them to be secured by the mortgage—i. e. $5,903.72, and also gave to them their obligation, binding themselves to assume and keep in the future all the other stipulations and covenants of said lease, "provided said lessors shall, promptly and without delay, enforce compliance with all the terms and conditions of the lease not already performed by us, and avail themselves of all needed legal measures, or allow us to do so, to expel said lessee for nonpayment of rent hereafter becoming due, and give us the privileges and benefit of said lease, according to the terms thereof."

On the sixth of September, a process of forcible entry and detainer, to recover from Baker the possession of the premises, was commenced against him by the lessors, returnable before the municipal court of Augusta, September 13th.

An appraisal was duly made of the attached property, and the appraisers having certified that it could not be kept without great expense and deteriorating in value, the officer, in accordance with law, advertised to sell the same at public auction on the 23d day of September, but was prevented from so doing by an injunction from this court, on the 22d of that month, in the bankruptcy proceedings; and the property was therefore held by the sheriff under his attachment until the respondents were appointed assignees, when the same was turned over to them by the sheriff. The process of forcible entry and detainer was also stayed by an injunction from this court, on the 24th of September, until the further order of the court.

The assignees having obtained the possession of the mortgaged property, Whithed proposed to purchase the same, together with any interest acquired by the assignees in and by virtue of the lease, for the sum of ten thousand dollars. They petitioned this court for leave to accept the offer of Whithed. Notice of the petition was given to the mortgagees and all others interested, and no one appearing to object, the court authorized the sale to be made under Rev. St. U. S. § 5063, which has been done.

Upon a careful revision of the accounts, it appeared that the bankrupt had paid to one of the lessors, Milliken, by board $786.67, which should have been allowed in part discharge of the rent; and that there had been an over-payment of rent, by the attaching creditors to that amount, on the 27th day of

August. A settlement was accordingly made between the lessors and the attaching creditors, the sum of $4,919.11 being claimed as due on the 27th of August, and a further sum of $213.33 for additional rent of the premises from August 27th to September 20th, the day of the filing the petition in bankruptcy; these two amounts, in the aggregate $5,132.44, were retained by the lessors, and the balance of the amount received by them was repaid to the attaching creditors. The petitioners in their present petition now ask that the assignees may be ordered to refund to them, from the proceeds of sale, the $5,132.44 and interest, they having relinquished to the assignees and discharged all claim, under the endorsement on the mortgage of August 5th, to any proceeds of sale of the furniture acquired by Baker after the 14th of October.

The respondents, in behalf of the creditors, deny the validity of the original mortgage of Oct. 14th, and claim that it was rendered null and void by the proceedings of August 5th; and they called at the hearing the bankrupt as a witness, who testified "that soon after the attachment made by the Gas Co., Cushman, one of the mortgagees, called upon him, he being then unwell and confined to his room, with the mortgage and endorsement thereon, as it now appears, and requested him to execute the same, at the same time assigning as a reason therefor, that there were several parties in Augusta who were disposed to put him to trouble and expense, and subject them to a good deal of cost and inconvenience; that it would be no harm to me, but on the contrary a benefit to me if I signed the paper; and I then executed it."

It is claimed upon this statement, that one purpose of the mortgagees in thus procuring the endorsement and having the mortgage cover the subsequent acquired property of the mortgageor, was to delay other creditors and prevent their attachment of this property. The original mortgage provided "that all property of a similar description to that then on the premises, which the mortgageor should thereafter add thereto, should pass under the mortgage." A stipulation of this nature was held valid and effectual as against an assignee in bankruptcy under the former bankrupt law. Mitchell v. Winslow, [Case No. 9,673.] So that all of the subsequent acquired property of a similar description to the old, the mortgagees could have retained as against an assignee in bankruptcy. Cushman has not been called to contradict this statement of the bankrupt, and I am therefore for this hearing to consider it as established, that one motive and purpose of the mortgagees in procuring this endorsement was to delay creditors of the bankrupt, and that this transfer of the subsequent acquired property was fraudulent, and could not prevail as against attaching creditors.

No rights, therefore, were acquired to the new property, and this endorsement was a

nullity, so far as creditors were concerned; but that I hold is the extent of its operation. It did not deprive the creditors of any rights whatever which they before had. The newly acquired property was still open to attachment for Baker's debts, but the property, which belonged to Baker at the time the original mortgage was executed, did not become subject to such liability. That mortgage was originally valid and effectual, and so ·continued notwithstanding the parties at a day long subsequently might have contemplated a fraudulent purpose relative to the other property of the bankrupt, and to subject it to liability for the security of the same claims embraced in the original mortgage. The rights of all parties are the same as they would have been, if instead of making this endorsement on the back of the original mortgage, a separate, independent mortgage had been given, on August 5th, upon the subsequent acquired property, as security for the claims covered by the original mortgage, and the parties at the time had designed thereby to defeat or delay the other creditors. It is quite clear that the latter mortgage would be fraudulent and void as against creditors and assignees in bankruptcy; but it is equally clear to my mind that it could not in any manner affect the prior mortgage untainted by any fraud in its inception.

In the present case the petitioners have filed a written waiver and release of all interest in and to any property not included in the original mortgage, the proceeds realized from the sale of that property being in excess of the amount paid by them to the mortgagees, so that no claim is made under the fraudulent endorsement.

It is further contended by the assignees, that there has been collusion between the petitioners and the owners of the Augusta House, to turn over, all the personal property of the bankrupt to the petitioners, that they might acquire a title thereto for a sum far below its real value, and in fraud of the other creditors. The history of the case certainly manifests that the owners of the property were quite willing to be rid of Baker as their tenant, and that the petitioners, or Whithed, might take possession in his stead and occupy the house, and acquire all their rights to Baker's property, on complying with his obligations under the lease and mortgage.

To accomplish these ends there can be no question that the landlords resorted to a foreclosure of the mortgage and to their process of forcible entry and detainer, and the attaching creditors to the appraisal and contemplated sale by the sheriff of the property attached; but every step in these proceedings was in accordance with the laws of this state, while to counteract their force and effect, the bankrupt and his creditors applied to this court, and availed themselves of its restraining process to prevent their opponents obtaining any advantage by their movements under the various provisions of the state laws. Each side, in my view, stood on their legal rights, endeavoring to obtain all the advantages that the law would afford them; and as it would now seem, the whole rather resulted in a drawn game, neither party having obtained any very great success over the other, the property of the bankrupt having vested in his assignees in substantially the same condition it would have done if this warfare had never existed. But nothing is shown which would justify this court in declaring that there was such collusion between the parties as should deprive the petitioners of any rights to which they would otherwise be entitled.

Having disposed of these objections, there remains to be determined what are the petitioners' rights in this fund, the proceeds of the mortgaged property sold by order of the court, and now in the custody of the court, as against the assignees in bankruptcy.

The petitioners made an attachment of this property to secure a just debt; this attachment was valid under the laws of this state, but liable to be defeated by proceedings in bankruptcy instituted within four months. The property thus attached was subject to a valid mortgage; and the laws of this state empowered the attaching creditors to pay the amount of this incumbrance and discharge the claim thereon, and if the creditor redeem the property, and it is subsequently sold by the officer, he shall from the proceeds first pay to the creditor the amount, with interest paid by him to redeem the property. The officer, in strict compliance with the law, was about to sell this property and pay to the creditors the amount they had paid to redeem, when he was enjoined by this court from so doing, and was compelled to retain the property until assignees were appointed, and then to surrender it to them, and they have since, by order of this court, sold it for a sum in excess of the amount paid by the creditors to redeem it.

Under these circumstances, which party has the better equity, the creditors who have paid this amount to discharge this valid claim, an incumbrance upon the property, and for which at present they are just so much the poorer, or the assignees, who by reason and on account of this very payment by these creditors, have received the property relieved and discharged from this incumbrance, and thereby the estate in bankruptcy is just so much the larger for distribution than it would have been if the creditors had not paid this sum?

The simple statement of the proposition presents most conclusively its own solution. Conceding that the payment of the amount "discharged" the incumbrance, or "redeemed" the property, it is equally certain that the law itself, the instant the payment was made, the property being in the possession of the officer, imposed upon the property a new lien or incumbrance for the security of

the creditors for the amount paid by them to redeem. The officer constantly retained the property charged with this trust and statutory lien, until sold by him, and the proceeds he was required to pay over to the creditor to the extent he had paid out in redemption of the property. The lien, therefore, upon this property for the security of the redemption creditor, was thus created by statute, and was as effectual and binding upon the property as could be had by the most formal contract. The statute provided its own method for its enforcement, and this would have proved effectual and sufficient if the court in bankruptcy had not interposed and prevented the officer from completing the steps in that behalf, which the state law contemplated as sufficient.

In Savings Bank v. Stuyvesant Bank, [Case No. 12,919,] Mr. Justice Hunt of the supreme court of the United States, says:

"The soundness of the position that liens are preserved under the bankrupt act, and that the holders of them are to be protected, cannot be well doubted.

"The bankrupt act of 1841, [5 Stat. 440; repealed March 3, 1843, 5 Stat. 614,] in its second section, was very explicit on this subject, and it was repeatedly held that liens or rights of property created by the laws of the state could not be disturbed while enforcing the provisions of the act. The rule is the same under the present bankrupt law, and although not stated in terms so precise and specific as are found in the act of 1841, the provisions of sections 14 and 20 establish the same rule."

In Re Wynn, [Case No. 18,117,] Chase, C. J., says: "We do not doubt that the assignee takes the property in the same plight in which it was held by the bankrupt when his petition was filed, subject to such liens or incumbrances as would affect it if no adjudication in bankruptcy had taken place. * * * Liens are of various descriptions, and may be enforced in different ways; but we think it sufficient to say here, what seems to us well warranted in principle and authority, that whenever the law gives a creditor a right to have a debt satisfied from the proceeds of property, or before the property can be otherwise disposed of, it gives a lien on such property to secure the payment of this debt." In that case a statute of Virginia required an officer who took goods on certain premises under legal process, to pay out of the proceeds the rent in arrear, and the chief justice remarks: "We cannot doubt that this statute creates a lien in favor of the landlord, and a lien of high and peculiar character." While that language is peculiarly applicable to the present case, the lien in the present case is of a higher nature, as the party claiming it has discharged a prior lien upon the same property, for the exact amount which he now claims to be allowed, and all parties interested in the property have been benefited to the exact

amount claimed, as no one could have in any way recovered a dollar from the property without first discharging the incumbrance.

In Parker v. Muggridge, [Case No. 10,743,] Mr. Justice Story says, "The plaintiffs have an equitable lien and a superior title to the property over the assignee and the general creditors, and the assignee must take the property of the bankrupts for the general creditors, subject to this lien and superior title, * * * and the property will be followed and affected with the trust in the hands of the assignees, in the same manner and to the same extent as it would be in the hands of the bankrupt. * * * We all know that in bankruptcy the assignee takes only such rights as the bankrupt himself had, and is subject to like equities."

This last proposition, with a modification repeatedly recognized by Judge Story himself, that in cases of fraud the assignee may acquire and enforce rights which the bankrupt could not, has been affirmed scores of times, by every tribunal in the United States administering the bankrupt law. If bankruptcy had not intervened, the bankrupt could not have prevented the creditors receiving the payment which they now claim from the proceeds of the sale of the goods upon which they had a valid statute lien; charged with this lien those goods passed to the assignee, and the bankrupt court, administering principles of equity, is not restricted to the course provided by the statute for affording redress to these claimants. Having taken this property burdened with this incumbrance it is bound on every principle of equity law, first to see that this lien is paid off and fully discharged before it will allow any portion of the proceeds of the property to be distributed among the general creditors.

It is said that this principle will not justify the payment of the $213.33 being for the rent from the 27th of August to the day of the filing the petition in bankruptcy; it is claimed that this sum was paid by force of the petitioners' obligation of August 27th, by which they, on certain conditions, became personally accountable to the lessors for the subsequent rent. These conditions appear to have been complied with by the lessors, and I am of the opinion that the petitioners had rendered themselves personally accountable for the future rent; but I also hold that this remedy was merely cumulative, and that the lessors still held the security under their mortgage for its payment. They had done nothing at that time to discharge this security, or to estop them from availing themselves of it, in case it became necessary for their protection. They had received payment for rent up to the 27th of August, and had at the same time asserted, distinctly, their claim under the mortgage as security for future rent.

Between these dates, Aug. 27th and Sept.

20th, Baker was in possession of the premises, resisting the process of forcible entry and detainer instituted to oust him therefrom; his furniture was also there, subject to attachments for the benefit of the petitioners, who had at that time a much larger interest at stake in the same property, by reason of their lien on the same, for the amount paid by them to the lessors. They were therefore, as it were, compelled to discharge the claim for the subsequent rent, which was secured on the property, subject to their liens and attachment, as the claim for rent most certainly would have priority over the claim by attachment. The payment of the subsequently accruing rent was not strictly by force of the provisions of the law before cited, and it did not, therefore, strictly acquire for its security a lien as provided by statute, which would require the payment by the officer from the proceeds of sale; but its payment from these proceeds may, in my view, be justified under the circumstances, as against the assignees of the bankrupt by the principle of subrogation, which is frequently adopted by courts of equity. If the mortgage is to be deemed as now outstanding for the security of the payment of the rent, which under the circumstances may well admit of doubt, as the mortgagees upon notice have not objected to the sale of the mortgaged property, or to the granting of the prayer of the present petition, it is possible that the mortgagees might interpose and object, and that as against them and their future claims under this mortgage, the petitioners could not insist on being subrogated to their rights, qua the payment made by them for this subsequent rent; but I do not think the assignees in bankruptcy are at liberty to insist on this objection in behalf of general creditors: "It is a well settled and familiar principle that he, who acquires an interest in an estate that is subject to a mortgage or other charge, acquires at the same time the right to pay off such mortgage, or to exonerate the estate in the same manner that he would have been entitled, who created the incumbrance; and that in so doing he becomes substituted in the place of him to whom he has paid the money, in all cases in which it is necessary for his protection that the incumbrance should be kept alive; and he will in all cases of making such payment be deemed the assignee, if an assignment will better subserve the ends of justice than payment and extinction would do." Fletcher v. Chase, 16 N. H. 42.

"Where a party, advancing money to pay the debt of a third person, is compelled to pay it to protect his own rights, a court of equity substitutes him in the place of a creditor as a matter of course, without any agreement to that effect." Sandford v. McLean, 3 Paige, 122.

For these reasons, I hold that as against the assignees these petitioners have a right to demand the payment of the $213.33 from the sales of the mortgaged property, equally with the larger sum.

Finally, it is objected that these proceedings of the petitioners were in furtherance of an attachment, which was an attempt to obtain a preference fraudulent under the bankrupt law. This objection at first appeared of some force, but on reflection I am satisfied it should not prevail. The bankrupt act in terms declares what are prohibited and fraudulent transfers and preferences, and denounces them under certain penalties; but an attachment, on mesne process, is nowhere enumerated among them. It does declare, that the assignment to the assignee shall vest in him the property of the bankrupt, although the same is then attached on mesne process as the property of the debtor, and shall dissolve any such attachments made within four months next preceding the commencement of bankruptcy proceedings.

The attachment is nowhere declared to be a fraud upon the act; on the contrary, if permitted by the state law, it may be made, and will continue in full force until the assignment, and only fails and dissolves away in case the assignment is made in proceedings commenced within the four months; in that case, the result will be, the party obtains no benefit from his attachment; he has incurred expenses incidental to it, for which he has no claim against the bankrupt or his estate; but any other rights, by virtue of the state law, which he has acquired in the property, still continue to him and are not affected by the bankruptcy proceedings. An express provision should be had to defeat these rights, and none such is anywhere found in the act.

It results that the petitioners are entitled to payment of the full amount claimed by them with interest from the date of such payments.